The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
************
 EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Hayes and Dr. Bell are OVERRULED.
***********
Accordingly, the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Companion Property Casualty is the carrier on the risk.
4. Plaintiff's average weekly wage at all relevant times was $291.60, yielding a compensation rate of $194.41 per week.
***********
Based upon all of the competent, credible, and convincing evidence of record and reasonable inferences drawn therefrom, the undersigned make the following additional
 FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was a 53 year old female and had obtained her GED.
2. Plaintiff worked at Hatteras Yachts for approximately 15 years, beginning in 1972. One of plaintiff's jobs at Hatteras Yachts was as a spray painter's assistant. This job aggravated her breathing.
3. Plaintiff later worked for Texas Gulf and Fairfield Harbor as a security guard. Plaintiff was also employed for a short time at Piggly Wiggly grocery store which included working in cold temperatures.
4. Plaintiff began temporary employment as a solderer at defendant-employer, Thermik Corporation, in 1988. She became a full-time employee at Thermik on May 30, 1989.
5. Plaintiff sought treatment for breathing problems at New Bern Family Practice as early as 1978, complaining of coughing and wheezing. Plaintiff has received treatment for various respiratory conditions, including asthma and Chronic Obstructive Pulmonary Disease (COPD), from at least 1978 through the present.
6. Plaintiff became the lead solderer at defendant-employer, and she also trained other production workers how to solder. Plaintiff soldered a wire to a "pill" as part of her job. Plaintiff soldered up to 4000 "pills" per day. In order to solder, plaintiff had to have her head "right over" the work table. Smoke came up into plaintiff's face when she touched the solderer to the flux. Eventually, plaintiff received a Fumex machine, consisting of a tube at the end of the soldering iron to catch the smoke. However, there were still fumes even with the machine in use. Solder and flux would build up in the tube, and the suction on the Fumex machine would be decreased. Furthermore, not all of the soldering stations at defendant-employer's workplace had a Fumex machine.
7. Plaintiff complained to her manager, David Preis, about fumes and smoke in the plant, and she also complained to other employees. Mr. Preis was concerned for the safety of the solderers due to the smoke and fumes, and he tried to implement various means to reduce the fumes.
8. Plaintiff was provided with a mask. However, the mask was uncomfortable, and she frequently removed it.
9. Defendant-employer's plant contained smoke and haze in the air. In addition, there were fumes from the epoxy process used in the production area. Smoke, fumes and haze surrounded the workers (including plaintiff) in the production area on a continuous basis during plaintiff's employment there. Plaintiff was last exposed to the hazards of these smoke and fumes in the employ of defendant-employer and while the defendant-carrier was on the risk.
10. Dr. Edwin Bell began treating plaintiff in April 1994. He took her out of work in November of 1994 and again in February of 1995. Plaintiff received short-term disability while out of work until November 1995.
11. When her symptoms leveled out, Dr. Bell allowed plaintiff to return to work. When she reported to work on Monday mornings, she would be feeling fine. However, by Tuesday evening, she was again symptomatic. Plaintiff finally left her employment at defendant-employer's on November 15, 1995, following the advice of Dr. Bell.
12. Plaintiff has not worked for wages since she left defendant-employer's in 1995, due to her occupational asthma. She now has good days and bad days with her breathing. Her condition often depends upon how humid it is outside and upon whether or not she is exposed to asthma triggers.
13. Plaintiff spends a lot of time at a country store, which has beer and wine licenses in her name. Another individual manages the store for her. Plaintiff has an apartment upstairs above the store. When she tires during the day, she will go upstairs and rest. Sometimes she helps with paperwork or picks things up around the store. However, she receives no income from the store.
14. Plaintiff's treating physician, Dr. Edwin Bell, is board certified in internal medicine, pulmonary diseases, and critical care medicine. Dr. Bell first saw plaintiff on April 12, 1994. Prior to being referred to Dr. Bell, plaintiff had a cough and chest congestion. Dr. Bell made a tentative diagnosis of asthma and proceeded to treat plaintiff for this disease. Initially, she did not show much response to drug therapy. In fact, she worsened. She finally began to show improvement in early 1995. Utilizing objective pulmonary function studies and clinical observation, Dr. Bell was eventually able to make a definitive diagnosis of asthma with COPD. Asthma is the biggest factor in her condition.
15. Dr. Bell specifically diagnosed plaintiff as having occupational asthma, based upon her exposures at work, the patterns she demonstrated with lung function studies, and her clinical response. After reviewing the Material Safety Data Sheets (MSDS) of the chemicals to which plaintiff was exposed to at work, Dr. Bell singled out resin, used to make the solders melt and flow, as a substance known to cause occupational asthma. He also identified other chemicals listed in the MSDS's which are known to be respiratory irritants, and to which plaintiff was exposed by breathing the smoke and fumes at her employment.
16. Dr. Bell correlated plaintiff's work at defendant-employers and her symptom progression. Dr. Bell has noted a trend for stability since plaintiff has left the workplace. He placed upon plaintiff an "absolute prescription" that she avoid the exposures she had been having at her employment at defendant-employer's.
17. Plaintiff has lung impairment, and her condition is permanent. Plaintiff will need continued medical monitoring for the rest of her life, particularly in light of the many diseases and complications she could develop as a result of her continuing steroid therapy.
18. Plaintiff smokes about 4-5 cigarettes a day. Smoking does not cause asthma and will not cause progressive worsening of asthma. Even with plaintiff's smoking, her condition would not have progressed to the point it has without her workplace exposure at defendant-employer's.
19. Asthma may be aggravated by exposure to things such as perfumes, dust, smoke, and cold weather. However, these things are not specific sensitizers. Therefore, they will not worsen someone's asthma or cause progression of the disease. Specific sensitizers that would cause or worsen occupational asthma are the chemicals released during the soldering process such as the sulfur dioxide released when the insulation on wires is melted during soldering.
20. Plaintiff's exposures to the chemicals contained in the smoke and fumes at defendant-employer's were a cause or a significant contributing factor to plaintiff's occupational asthma.
21. Plaintiff's exposures at defendant-employer's caused her lung condition to degrade to the point where she was unable to be employed.
22. Plaintiff, at defendant-employer's, was at an increased risk of developing occupational asthma over members of the general public not so exposed.
23. Dr. D. Allen Hayes performed an independent medical examination of plaintiff on November 18, 1997, at the request of defendants. Dr. Hayes is board-certified in pulmonary, critical care, and internal medicine. Dr. Hayes only examined plaintiff on one occasion and was not her treating physician. According to Dr. Hayes, plaintiff's exposures at defendant-employer triggered some of her symptoms, aggravated others, and should be avoided in the future. Dr. Hayes believed plaintiff should avoid returning to the workplace environment at defendant-employer due to her pulmonary condition.
24. According to Dr. Hayes, breathing smoke containing sulfur dioxide could cause asthmatic reactions. Dr. Hayes identified sulfur dioxide as a decomposition product produced when the insulation of the wires at defendant-employer's plant is burned. He agreed that sulfur dioxide, as a decomposition product, has been associated with various forms of asthma.
25. Dr. Bell disagreed with Dr. Hayes' statement that plaintiff has sufficient lung reserve that she should and could probably work in an environment with clean air. Dr. Bell explained that lifting and walking could aggravate plaintiff's occupational asthma. The degree to which she will be able to perform these activities will vary from day to day. For example, plaintiff may be able to go into a workplace and do some lifting and walking in the morning and then have a change in her condition and not be able to perform these same tasks in the afternoon. Similarly, because of the variations in the severity of her occupational asthma, she may be able to tolerate lifting and walking today but not tomorrow. The undersigned give greater weight to the testimony of Dr. Bell, plaintiff's treating physician, than to that of Dr. Hayes, who only saw plaintiff once.
26. Due to her lung condition caused by her occupational asthma, plaintiff has been totally disabled since November 15, 1995.
27. There is insufficient convincing evidence in the record from which it can be determined by its greater weight that plaintiff earned any wages, income, or had any wage-earning capacity in relation to the country store business which has the licenses in her name.
28. There is insufficient convincing evidence in the record from which it can be determined by its greater weight that defendants are due a credit for any short-term disability that was paid to plaintiff. If, however, defendants contributed to the short-term disability policy, then they will be entitled to credit for amounts contributed.
***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. The plaintiff has contracted a compensable occupational disease, namely occupational asthma, which is covered by the Workers' Compensation Act. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff was last injuriously exposed to the hazards of her occupational asthma while in the employ of defendant/employer and while defendant/carrier was properly on the risk. Therefore, defendants are liable for the occupational disease. N.C. Gen. Stat. § 97-57.
3. As a result of her occupational disease, plaintiff has been unable to earn wages of any kind since November 15, 1995. Plaintiff is entitled to benefits for temporary total disability at the rate of $194.41 per week, from November 15, 1995, to the date of the initial hearing and continuing until further order of the Commission or until she returns to work. N.C. Gen. Stat. § 97-29.
4. The plaintiff is entitled to medical treatment for her occupational disease, to the extent that it is designed to affect a cure, give relief, or lessen her period of disability. N.C. Gen. Stat. § 97-25.
5. Because there was no evidence as the amount of weekly short-term disability benefits paid to plaintiff, it is impossible to determine the amount of credit due, if any. If defendants are claiming a credit for portions of the short-term disability policy funded by defendant-employer, then defendants should notify the Industrial Commission and the plaintiff within 30 days with the exact amounts and supporting documentation on their claim for a credit.
6. The plaintiff's ownership of a business or having a business licensed in the plaintiff's name is not indicative of wage-earning capacity and does not disprove disability. Brantleyv. Rex Hospital, I.C. File No. 182821 (Full Commission, 1995),McGee v. Estes Express Lines, I.C. File No. 014213 (Full Commission, 1997).
***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 AWARD
1. The defendants shall pay workers' compensation benefits to the plaintiff in the amount of $194.41 per week from November 15, 1995, to the present and continuing until further Order of the Commission or until she returns to work, subject to the attorney's fee hereinafter awarded. Accrued amounts shall be paid in a lump sum.
2. A reasonable attorney's fee in the amount of 25% of the accrued compensation shall be deducted from the lump sum due plaintiff and paid directly to the plaintiff's attorneys. In the future, every fourth compensation check shall be forwarded directly to the plaintiff's attorney.
3. The defendants shall provide and pay for such medical treatment as is recommended by her physicians for her occupational diseases, and defendants shall pay all unpaid medical expenses and reimburse plaintiff for all past treatment related to the same, when such medical bills have been properly submitted for approval.
4. The defendants shall pay the costs.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the ___ day of _______, 1999.
 S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
JHB:kws